Filed 5/27/26  Marriage of Pollard CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| In re the Marriage of ERIC A. and JOLYNN M. POLLARD. | B344571 |
| _____ | (Los Angeles County Super. Ct. No. GD046260) |
| ERIC A. POLLARD, | |
| Appellant, | |
| v. | |
| JOLYNN M. POLLARD, | |
| Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jannet P. Santiso, Judge. Affirmed.

Gary W. Kearney for Appellant.

Melissa B. Buchman for Respondent.

_____

This is the fourth appeal brought by Eric A. Pollard (Eric) against his former wife JoLynn M. Pollard (JoLynn) following the dissolution of their marriage 15 years ago.[1] Eric is challenging a postjudgment order denying both parties their requested attorney fees. The family court concluded neither party was the "prevailing party" under the attorney fees provision of the marital settlement agreement (MSA) and Civil Code section 1717. Eric contends the court erred in failing to conclude he was the prevailing party and thus entitled to attorney fees. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

**A.  Marital Dissolution**

Pending the dissolution of their marriage, Eric and JoLynn entered into an MSA on October 27, 2010. They agreed to share legal custody of the daughters. JoLynn was to have sole physical custody. Eric was to pay child support. JoLynn and the daughters were to remain in the family residence until certain conditions were met. When that occurred, the residence was to be sold. Eric was to receive a specified share of the equity in the property plus interest.

On April 15, 2011, the parties each signed a Stipulation to Establish or Modify Child Support and Order (Form FL-350).

---

[1] In our prior opinions, we noted JoLynn's surname had been changed to Scharrer. Whether that is still true, we will continue to refer to both parties by their first names for clarity and simplicity.

[2] To the extent they are relevant, facts in this opinion are taken from our unpublished opinions in *In re Marriage of Pollard* (Dec. 17, 2021, B310862) and *In re Marriage of Pollard* (Aug. 7, 2024, B336037).

Form FL-350 provided the dollar amounts of Eric's monthly child support obligations.[3]

On July 19, 2011, the family court signed and filed the judgment of marital dissolution. Concurrently filed and incorporated into the judgment were the MSA, Form FL-350, and court order enforcing Form FL-350.

## B. Eric's Request for Order for Attorney Fees

After entry of the judgment of dissolution, the parties engaged in years of litigation over Eric's claim JoLynn owed him his equity share in the family residence and JoLynn's claim Eric owed her child support arrearages.

On October 3, 2024, Eric filed a Request for Order (RFO) for the amount JoLynn owed him for his share of the equity in the family residence offset by the amount of child support he owed her. Eric argued if properly calculated, he would come out ahead; JoLynn would still owe him some equity in the residence. Eric also asserted as the prevailing party in this case, he was entitled to attorney fees under the MSA fees provision and Civil Code section 1717.

JoLynn filed an opposition to the RFO. She argued no offset was possible. Eric never paid the child support required by Form FL-350. JoLynn contended she, not Eric, was the prevailing party in this case and was thus entitled to attorney fees under the MSA fees provision and Civil Code section 1717.

---

[3] To comply with the statewide uniform child support guidelines (see Fam. Code, § 4065) where a child support agreement is below the presumptively correct formula amount, the agreement must be memorialized in a Form FL-350, signed by the parties and filed with the court.

In reply, Eric maintained he had paid his required child support. He also argued JoLynn could not be considered the prevailing party. Her litigation stemmed solely from Form FL-350, which was a separate agreement from the MSA.

On December 4, 2024, the family court ruled "the litigation fees and costs relating to child support arrears was subject to the statutory fees provision of the judgment . . . and thus recoverable under Civil Code section 1717, prevailing party fees." However, the court determined that due to the mixed results of the litigation, neither party qualified as the prevailing party and rejected their requests for attorney fees.

## C. Instant Appeal

Eric filed this timely appeal.

## DISCUSSION

Eric contends the family court erred as a matter of law in denying his request for attorney fees as the prevailing party. He argues the court misinterpreted the parties' intent to have the Form FL-350-based litigation subject to the MSA fees provision.

Although the denial of attorney fees is generally reviewed for an abuse of discretion (*Walker v. Ticor Title Co. of California* (2012) 204 Cal.App.4th 363, 370), we independently review any legal issues, including the meaning of statutes and contracts. (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 894 [" 'determination of the legal basis for an award of attorney fees' is a 'question of law' which the reviewing court will examine de novo"].)

California follows the so-called "American rule" when it comes to attorney fees: Parties in civil litigation bear their own attorney fees unless a contract or statute provides otherwise. (Code Civ. Proc., §§ 1021, 1032, subd. (b), 1033.5, subd. (a).) In

4

family law, a party may request fees pursuant to a statutory method, such as Family Code section 271, 2030, or 2032. Alternatively, parties may request "reasonable attorney's fees" under Civil Code section 1717. As pertinent here, that statute allows the "prevailing party" in "any action on a contract" to recover fees "incurred to enforce that contract." (Civ. Code, § 1717, subd. (a).)

" 'Before [Civil Code] section 1717 comes into play, it is necessary to determine whether the parties entered an agreement for the payment of attorney fees and, if so, the scope of the attorney fee agreement.' [Citation.] This determination requires us to apply traditional rules of contract interpretation." (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 752 (*Mountain Air Enterprises, LLC*).) A marital settlement agreement incorporated into a dissolution judgment is construed under the same traditional contract rules. (*In re Marriage of Simundza* (2004) 121 Cal.App.4th 1513, 1518.) "[W]e first consider the mutual intention of the parties at the time the contract providing for attorney fees was formed. (Civ. Code, § 1636.) Our initial inquiry is confined to the writing alone. (*Id.*, § 1639; [citation].)" (*Mountain Air Enterprises, LLC*, at p. 752.)

Here, the MSA attorney fees provision stated in relevant part: "Should a dispute arise regarding the enforcement of this agreement, the prevailing party will be entitled to his or her reasonable costs and attorney's fees."

Eric contends JoLynn's child support dispute was not regarding the enforcement of the MSA but of Form FL-350 instead. Form FL-350 consisted of the parties' agreement for Eric to make the following monthly payments: $10 for basic child

5

support, $65 for health care expenses, and $1,700 for special education expenses, totaling $1,775. The MSA also contained a child support provision. According to paragraph P.1., "Support And Maintenance Of Children:" "Eric shall pay JoLynn as and for child support a mutually agreed-to sum per month of not less than one half of the tuition, other school expense and health expenses incurred by JoLynn on behalf of the children."

Eric maintains Form FL-350 and paragraph P.1. were "inconsistent" and constituted "two separate and distinct" child support agreements. He reasons while Form FL-350 indicated "a monthly sum," paragraph P.1. did not. As such, the parties did not intend Form FL-350-based claims to be within the scope of the attorney fees provision at the time the MSA was drafted. We are not persuaded.

When interpreting an agreement turns on the parties' intent, that intent " 'is to be gathered, if possible, from the instrument itself.' " (*Norris v. State* (1968) 261 Cal.App.2d 41, 46; accord, *City of Manhattan Beach v. Superior Court* (1996) 13 Cal.4th 232, 238.) " 'The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation. [Citation.] Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning.' " (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 608; accord, *Mountain Air Enterprises, LLC, supra,* 3 Cal.5th at p. 752.) Further, "a contract must be understood with reference to the circumstances under which it was made and the matter to which it relates." (*Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1344.)

The language of paragraph P.1. was unambiguous. First, it expressly conveyed the parameters of the parties' child support agreement: Eric was responsible for at least half the costs of the daughters' monthly medical and educational expenses. Second, although no dollar amount of Eric's monthly payment was stated, the language clearly showed the parties agreed a negotiated amount would be forthcoming: That Eric was to pay "a mutually agreed-to sum," meant the parties intended to come to an agreement as to the required dollar amount. Form FL-350 constituted this subsequent agreement in which the parties stipulated Eric was to pay $1,775 in monthly child support. The document was signed by both parties. There is no question that Form FL-350 was incorporated into paragraph P.1. and fell within the scope of the MSA attorney fees provision as part of the MSA ("this agreement"). Indeed, as a practical matter, in view of the interrelated claims in this case, it would be impossible to discern the prevailing party without reviewing the litigation of both parties, as the family court did at length.

Eric has failed to demonstrate the family court erred as a matter of law by applying the fees provision to the child arrearages litigation in considering an award of attorney fees under Civil Code section 1717.

Rather than focus on the language of paragraph P.1., Eric relies on several integration clauses in the MSA to argue the parties intended the MSA to be "their final agreement." " 'The crucial issue in determining whether there has been an integration is whether the parties intended their writing to serve as the exclusive embodiment of their agreement.' " (*Kanno v. Marwit Capital Partners II, L.P.* (2017) 18 Cal.App.5th 987, 1001.) The presence of an integration clause is not conclusive.

7

Courts must look to the writing itself, among other factors. (*Ibid.*) This brings us back to the language of paragraph P.1. It established the parties did not intend the MSA to be the final, complete, or exclusive expression of Eric's child support obligations in the absence of Form FL-350. (See Code Civ. Proc., § 1856.)

## DISPOSITION

The order is affirmed. Respondent JoLynn M. Pollard is awarded costs on appeal.


RICHARDSON, J.


WE CONCUR:


CHAVEZ, Acting P. J.


GOORVITCH, J.