MRW, INC., a California corporation; and 500 Luther Road LLC, a California limited liability company, Plaintiff,

v.

BIG–O TIRES, LLC, a Nevada limited liability company; CIT Small Business Lending Corporation, a Delaware corporation; and Does 1 through 50, inclusive, Defendants.

No. Civ. S–08–1732 LKK/DAD.

United States District Court, E.D. California.

Jan. 14, 2010.

Oliver R. Gutierrez, Law Offices of Oliver R. Gutierrez, Redwood City, CA.

Andrew Scott Mackay, Donahue, Gallagher, Woods LLP, Oakland, CA, Harold R. Bruno, III, Zachary P. Mugge, Phv, Robinson Waters & O'Dorisio, PC, Denver, CO, Brian Richard Blackman, Sheppard, Mullin, Richter & Hampton LLP, San Francisco, CA, Ruben David Escalante,

Scott B. Lieberman, Sheppard Mullin, Costa Mesa, CA, for Defendants.

## *ORDER*

LAWRENCE K. KARLTON, Senior District Judge.

Plaintiffs in this suit are two business entities, MRW, Inc. and 500 Luther Rd., LLP. Plaintiffs took a loan from defendant CIT Small Business Lending Corp. ("CIT"). This loan was guaranteed by four members of the Platner family, who in turn owned and controlled plaintiffs. Plaintiffs sued CIT for fraud and breach of fiduciary duty in connection with this loan. CIT filed a third party complaint against the guarantors for breach of the guaranty contract. By order of October 16, 2009, the court granted summary judgment to CIT on both plaintiffs' claims and on CIT's third party claim.

Pending before the court are CIT's request for entry of judgment as to the third party complaint, CIT's bill of costs, and CIT's motion to enforce the fee shifting provisions contained in the loan and guarantee agreements, under Fed.R.Civ.P. 58(d), 54(d)(1), and 54(d)(2), respectively. The court resolves these three matters on the papers and after oral argument. For the reasons stated below, all three are granted.

## I. BACKGROUND

### A. Loan and Guaranty

Plaintiffs borrowed $1,172,000 from CIT. Order of October 16, 2009 at 7–8, 2009 U.S. Dist. LEXIS 100785, 2009 WL 3368438 (Order Granting Summary Judgment). A portion of this loan was to be used to purchase real estate, which served as a partial security for the loan. *Id.* at 7. In connection with the loan approval process, CIT commissioned an appraisal of the property *Id.* CIT also required mem-

bers of the Platner family to personally guarantee the loan. *Id.* at 8.

Plaintiffs defaulted on the loan in 2005. *Id.* at 10. In 2006, plaintiffs and the guarantors entered forbearance agreements with CIT, wherein they "released any and all claims against CIT in any way connected with, arising out of or related to the loan documents, excluding only those claims caused solely by CIT's gross negligence or willful misconduct." *Id.* Despite these forbearance agreements, plaintiffs again fell into default. As explained in the prior order,

> CIT completed a nonjudicial foreclosure on the real property securing the loan on March 10, 2008. At this sale, CIT purchased the real property for $600,000, which CIT applied to the outstanding amount on the loan. However, even after application of the $600,000, approximately $647,617.48 remains owing under the loan documents as of September 9, 2009.

*Id.* at 10–11.

## B. Procedural History

On July 27, 2008, plaintiffs filed suit against CIT, bringing claims for intentional misrepresentation, negligent misrepresentation, and breach of fiduciary duty. Plaintiffs alleged that CIT misrepresented the degree to which it would comply with Small Business Association lending guidelines, and that CIT misrepresented, at the beginning of the loan application process, the size of the loan that plaintiffs would ultimately be offered. The complaint also included a claim against a second defendant, Big O Tires, LLC, for breach of California's Unfair Competition Law. Big O Tires and the UCL claim are not pertinent to the pending matters.

CIT filed a motion to dismiss the three claims against it. The court granted this motion, dismissing all claims against CIT, but granting leave to amend. Order of November 25, 2008, 2008 U.S. Dist. LEX-IS 101902, 2008 WL 5113782. Plaintiffs filed an amended complaint, which CIT also moved to dismiss. The court dismissed the breach of fiduciary duty claim with prejudice, but denied the motion as to the misrepresentation claims. Order of February 20, 2009, 2009 U.S. Dist. LEXIS 13041.

On March 2, 2009, CIT filed a third party complaint against the four guarantors for breach of the guaranty agreement. Counsel for plaintiffs also represents the third party defendant guarantors.

In July and August of 2009, CIT propounded written discovery on the plaintiffs and the guarantors. CIT took the depositions of each of the guarantors, and further deposed Wayne Platner, one of the guarantors, in his role as the corporate representative of plaintiffs.

CIT then filed two motions seeking summary judgment on the misrepresentation and breach of contract claims. As to the breach of guaranty, the guarantors' only opposition to summary judgment was to argue that success on plaintiffs' misrepresentation claims would limit or offset CIT's recovery under the guaranty agreements. Order on Summary Judgment at 21. The court granted CIT's motions in full by order of October 16, 2009. *Id.* The court then entered judgment on plaintiffs' claims. (Doc. No. 107.)

The first matter currently before the court is CIT's request under Fed.R.Civ.P. 58(d) for entry of judgment as to its third party complaint. CIT seeks judgment in the amount six hundred forty seven thousand six hundred seventeen dollars and forty eight cents ($647,617.48), plus post-judgment interest in accordance with 28 U.S.C. section 1961. The guarantors have filed an objection to this request. In addition, prior to filing their objection, the guarantors filed a notice of appeal of the order granting summary judgment.

The second pending matter is CIT's bill of costs under Fed.R.Civ.P. 54(d)(1). Plaintiffs and guarantors have not objected to the bill of costs, which the court hereby approves.

Finally, CIT moves for attorney fees under Fed.R.Civ.P. 54(d)(2), seeking $198,971. 98 in fees. This motion is based on fee shifting provisions included in the promissory note, the deed of trust securing the note, the guaranty agreements, and the forbearance agreement. The court discusses the language of these provisions in part II.A.2, below.

## II.  DISCUSSION

### A.  Jurisdiction

After the motion for entry of judgment, motion for costs, and motion for fees were filed, plaintiffs and guarantors filed a notice of appeal. (Doc. No. 112.) After filing this notice of appeal, plaintiffs and guarantors filed oppositions to the request for judgment as to CIT's claims against the guarantors and the motion for fees.

No party has addressed the effect of this notice of appeal on this court's jurisdiction. It appears that the notice of appeal was premature, in that the court had not yet entered judgment as to the third party claims. Under Fed. R.App. P. 4(a)(2), "[a] notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry." Although the court had entered judgment as to some of the issues decided by the order of October 16, 2009, the court had not yet entered judgment on the related issues discussed in the third party complaint.

■ In this case, the court concludes that the "entry of the judgment" for purposes of Fed. R.App. P. 4(a)(2) requires entry of judgment on *all* issues decided by the order. Accordingly, the notice of appeal will not take effect until the court enters judgment as to the third party claim. Otherwise, the appeal would not be able to address the third party claim, despite the fact that this court has nothing more to say on the issue, and further despite the fact that the third party claim is intertwined with plaintiffs' tort claims.

Because the notice of appeal has not yet taken effect, the court retains jurisdiction to consider the motions for fees and costs under Fed.R.Civ.P. 54(d)(1)-(2).

### B.  Judgment  on  The  Third  Party Claim

CIT requests an entry of judgment as to its third party breach of contract claim against the guarantors, in the amount of the remaining loan balance plus post-judgment interest.

■ The guarantors object on the ground that when CIT foreclosed on the property securing the loan and sold it at auction, CIT itself purchased the property. Guarantors argue that the property was worth more than what CIT paid, and that as a result, CIT has inadequately mitigated its damages. The guarantors have not identified any procedural defect in the foreclosure or auction. The guarantors therefore object, in essence, to California's system of foreclosures, and the court rejects this objection. The guarantors also argue that the requested judgment is improper in light of the evidence submitted in support of plaintiffs' case. This evidence speaks solely to the question of liability, which has already been determined. Because guarantors' objections consist solely of arguments already rejected by the court, CIT's request for entry of judgment will be granted.

### C.  Costs

As noted above, plaintiffs and guarantors have not objected to CIT's motion for

costs. The court therefore awards costs as requested.

### D. Fees

CIT argues that the contractual fee shifting agreements entitle it to: (1) fees incurred in enforcing the loan documents prior to initiation of this action, (2) fees incurred in litigating CIT's breach of contract claim, and (3) fees incurred in litigating plaintiffs' tort claims. Plaintiffs and guarantors do not dispute that fees attributable to the first and second categories are recoverable. They argue, however, that fees solely attributable to the third category are not. Because CIT has not distinguished between fees attributable to the second or third categories,[1] plaintiffs and guarantors further argue that they are unable to determine the amount of fees attributed to the second category, and whether this amount is unreasonable.

The plaintiffs and guarantors raise two arguments as to why fees for defense of tort claims are not recoverable. First, they assert a statutory bar to a fee award, contending that under California Civil Code section 1717, the only fee shifting agreements that are enforceable are those awarding fees in an action to enforce a contract. As explained below, while Civil Code section 1717 specifically pertains to fees incurred on contract claims, other fee shifting agreements are enforceable under the California Code of Civil Procedure.

Second, they assert a contractual bar to fee recovery, arguing language of the agreements does not provide for fee as to the tort claims. Again, as explained below, California courts have interpreted language similar to that at issue here as

encompassing tort claims such as those filed by plaintiffs.

### 1. California Law on Enforceability of Fee Shifting Agreements

■ California law provides two separate frameworks governing fee shifting agreements, both of which render such agreements generally enforceable. The California Code of Civil Procedure provides the more general framework. California Code of Civil Procedure section 1021 provides that, except where specifically provided by statute, parties are free to enter their own agreements regarding payment of fees. Similarly, a prevailing party may ordinarily recover "costs," §§ 1021 and 1032(b), and parties may contractually designate fees as recoverable coasts, § 1033.5(a)(10). Pursuant to these provisions, "[p]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract." *Santisas v. Goodin*, 17 Cal.4th 599, 608, 71 Cal.Rptr.2d 830, 951 P.2d 399 (1998) (quoting *Xuereb v. Marcus & Millichap, Inc.*, 3 Cal.App.4th 1338, 1341, 5 Cal.Rptr.2d 154 (1992)).

■ A separate and more specific framework is provided by California Civil Code section 1717, which applies to fee shifting agreements relating to actions "on a contract," including actions "based on" or "sound[ing] in" contract. *Santisas*, 17 Cal.4th at 617, 71 Cal.Rptr.2d 830, 951 P.2d 399 (citing Cal. Civ.Code § 1717(a)). Section 1717 differs from the broader Code of Civil Procedure sections by providing two immutable limits on covered fee shifting agreements. First, section 1717

---

1. While CIT's argument is structured around these three categories, CIT's calculation of fees only distinguishes between pre-litigation fees and litigation fees. In other words, CIT claims $53,432.04 in fees and costs incurred prior to the filing of plaintiffs' complaint, and $145,539.94 in fees and costs incurred after the filing of the complaint, but CIT does not further divide the second figure.

renders all fee shifting agreements to which it applies bilateral, even when the agreement's language provides for only one-way or unilateral fee shifting. *Id.* at 611, 71 Cal.Rptr.2d 830, 951 P.2d 399 (citing section 1717(a)).[2] Second, section 1717 provides that when there is a voluntary dismissal, there is no "prevailing party," even when the agreement's language defines prevailing party more broadly. *Id.* at 617, 622–23, 71 Cal.Rptr.2d 830, 951 P.2d 399 (quoting Cal. Civ.Code § 1717(b)(2)). When an action falls within the scope of section 1717, section 1717 preempts application of the code of civil procedure.

■ Civil Code section 1717 does not prohibit enforcement of fee shifting agreements in non-contracts cases; it merely provides specific rules applicable to those fee shifting agreements that fall within its scope. *Santisas,* 17 Cal.4th at 619, 71 Cal.Rptr.2d 830, 951 P.2d 399 ("section 1717 ... does not bar recovery of attorney fees that were incurred in litigation of [tort] claims and that are otherwise recoverable as a matter of contract law."). The guarantors cite several cases which held that tort claims fell outside the scope of Civil Code section 1717. *Exxess Electronixx v. Heger Realty Corp.,* 64 Cal.App.4th 698, 708, 75 Cal.Rptr.2d 376 (1998), *Childers v. Edwards,* 48 Cal.App.4th 1544, 1549, 56 Cal.Rptr.2d 328 (1996), *Xuereb v. Marcus & Millichap, Inc.,* 3 Cal.App.4th 1338, 1342, 5 Cal.Rptr.2d 154 (1992); *see also Santisas,* 17 Cal.4th at 619, 71 Cal.Rptr.2d 830, 951 P.2d 399 (Section 1717 does not apply to tort claims).[3] Each of these cases, however, held that because section 1717 did not apply, the fee shifting agreement was governed by, and enforceable because of, the Code of Civil Procedure. *Exxess,* 64 Cal.App.4th at 708, 75 Cal. Rptr.2d 376, *Childers,* 48 Cal.App.4th at 1549, 56 Cal.Rptr.2d 328, *Xuereb,* 3 Cal. App.4th at 1344, 5 Cal.Rptr.2d 154.[4] Each case then turned to the agreement's terms to determine whether to award fees.

■ Admittedly, CIT's opening memorandum only relied upon Civil Code section 1717, without reference to the Code of Civil Procedure. If, as the court assumes, the tort claims here do not arise under contract, this omission was an error. Allowing CIT to now rely on the Code of Civil Procedure does not prejudice the guarantors, however, because the cases relied upon by the guarantors explain this issue, and because in this case, the differences between Civil Code section 1717 and the Code of Civil Procedure are irrelevant. There was no voluntary dismissal in this case, so Civil Code section 1717(b)(2)'s definition of "prevailing party" is not at issue. To the extent that the agreements were

**2.** This mutuality applies even when a party seeks to defend a contract claim by arguing that the agreement is unenforceable. A party who successfully defends a contract claim by arguing that the contract is unenforceable may nonetheless enforce the contract's fee shifting provision, if any. *Santisas,* 17 Cal.4th at 611, 71 Cal.Rptr.2d 830, 951 P.2d 399.

**3.** Under ordinary principles of fee recovery, when an action involves both claims for which fees are and are not recoverable (such as when governed by a fee shifting agreement whose terms apply only to contract claims),

fees incurred in regard to issues common to both types of claims may be recovered.

**4.** Guarantors mistakenly contend that *Childers* and *Xuereb* held that fees incurred in defense of tort claims were not recoverable. Both cases held that section 1717 did not apply, but that section 1021 did, and that fees *were* recoverable under the language of the applicable agreements. *Childers,* 48 Cal. App.4th at 1548–49, 56 Cal.Rptr.2d 328, *Xuereb,* 3 Cal.App.4th at 1344, 5 Cal.Rptr.2d 154. *Exxess,* which considered different contract language, held that fees were not recoverable. *Exxess,* 64 Cal.App.4th at 708, 75 Cal.Rptr.2d 376.

unilateral, they were unilateral in CIT's favor; CIT does not rely on section 1717(a)'s enforced bilateralism. Although the court assumes that CIT cited the wrong provision of California law for the proposition that the fee agreements are enforceable, there is no doubt that the fee shifting agreements are enforceable under whichever framework applies.

The fee shifting agreements are enforceable. CIT is clearly the prevailing party in this case. The remaining questions are whether the fees fall within the scope of the contractual fee shifting arrangements here, and whether the fees requested are reasonable.[5]

## 2. Terms of The Fee Shifting Agreements

██ Whether fees incurred in defense of the tort claims may be recovered turns on specific language of the fee agreements. *Exxess,* 64 Cal.App.4th at 708, 75 Cal. Rptr.2d 376 (citing *Santisas,* 17 Cal.4th at 602, 608–609, 617, 619, 71 Cal.Rptr.2d 830, 951 P.2d 399). CIT's request for fees rests of four contractual fee shifting provisions, which are found in the promissory note, the deed of trust securing the note, the guaranty agreements, and the forbearance agreement.

Section 6(B) of the note states that CIT may, without notice and without the borrowers' consent:

Incur expenses to collect amounts due under this Note ... [including] reasonable attorney's fees and costs.

Paragraph 25 of the deed of trust, executed in connection with the note, states that:

Should Beneficiary [CIT] bring any action or suit to enforce any of its rights or remedies under the terms of this Deed of Trust, Beneficiary shall be entitled to recover its attorney's fees and costs.

The note and deed of trust concern the plaintiff/borrowers' obligation to pay fees, and an award of fees under these agreements will be against the plaintiffs. Because the guaranty agreements render the guarantors responsible for the plaintiffs' obligations, however, even if fees are awarded under these agreements, the ultimate effect is to award fees as to the guarantors.

The guaranty agreements further include a separate fee shifting provision directly shifting fees on to the guarantors. Section 9(a) of each of the guarantees states that:

Guarantor promises to pay all expenses Lender [CIT] incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

Finally, Paragraph 13 of the Forbearance Agreement states, in Part:

If any party to this Agreement institutes a legal or equitable action or arbitration proceeding in connection with any dispute or matter arising hereunder, the prevailing party shall be entitled to recover its attorneys fees . . . .

---

5. In opposing this motion, guarantors have provided a "Real Estate Appraisal Review," which guarantors contend demonstrates that plaintiffs' claims were filed in good faith. Declaration of Oliver R. Gutierrez (Doc. No. 119). Good faith is a factor in determining whether to award fees under the court's inherent power, 28 U.S.C. section 1927, or (in some instances) Federal Rule of Civil Procedure 11. *Fink v. Gomez,* 239 F.3d 989, 992 (9th Cir.2001) (inherent power), *Moore v. Keegan Mgmt. Co. (In re Keegan Mgmt. Co., Sec. Litig.),* 78 F.3d 431, 436 (9th Cir.1996) (section 1927), *Christian v. Mattel, Inc.,* 286 F.3d 1118, 1127 (9th Cir.2002) (Rule 11). Good faith is not a factor, however, under the contractual fee shifting provisions at issue here.

■ CIT raises three arguments. CIT's primary argument is that defense of the tort claims was a necessary step in the "collect [ion of] amounts due under [the] Note" and in the "enforce[ment]" of the guaranty, such that the agreements contained in the note and guarantees authorize fee awards here. Alternatively, CIT argues that even if fees are recoverable only in connection with the contract claim, all fees may be attributed to this claim, because plaintiffs' tort claims were raised as defenses to CIT's contract claim, such that all issues were intertwined. Finally, CIT argues that the broader language of the forbearance agreement authorizes fees for defense of the tort claims, because the tort claims "arose under" the transaction. The court adopts CIT's first argument, and need not consider the others.

The guarantors argue that defense of the tort claims was not an element of the "enforcement" of the loan or guaranty, relying primarily on *Exxess*. *Exxess* concerned a claim for failure to disclose defects prior to entry into a real estate lease. The lease provided that the prevailing party would recover fees incurred in "an action or proceeding to enforce the terms [of the lease] or declare rights hereunder." *Id.* at 702, 75 Cal.Rptr.2d 376. *Exxess's* interpretation of "declare rights hereunder" is not at issue here. As to enforcement, *Exxess* held that *plaintiffs* were not seeking to enforce the lease. *Id.* at 709, 75 Cal.Rptr.2d 376 (citing *Santisas*, 17 Cal.4th at 622 n. 9, 71 Cal.Rptr.2d 830, 951 P.2d 399). *Defendant* was seeking to enforce the lease, and *Exxess* assumed without deciding that defense of the tort claims

was an aspect of the enforcement. *Id.* at 712, 75 Cal.Rptr.2d 376. Not all enforcement efforts, however, fell within the contract's language. Instead, only expenses incurred in an *"action or proceeding* to enforce the terms" were recoverable. *Id.* (emphasis added). Defendant's broader enforcement efforts were not a legal or equitable action or proceeding, and plaintiff's suit, although it was a legal action, was not an action to enforce the lease. For this reason, defendant's request for fees was denied. Thus, contrary to the contention of plaintiffs and guarantors in this suit, *Exxess* did not decide that defense of tort claims that would invalidate a lease was not "enforcement" of the lease.[6]

Where agreements have not contained such an "action or proceeding" restriction, California courts have held that defense of tort claims constituted "enforcement" of the contract, thereby decided the issue *Exxess* merely assumed. In *Wagner v. Benson*, borrowers and their lender "agreed to compensate the prevailing party for reasonable costs incurred in collecting the balance due on the notes." *Wagner v. Benson*, 101 Cal.App.3d 27, 37, 161 Cal.Rptr. 516 (1980).[7] The borrowers brought claims for misrepresentation, negligence, and bad faith concerning the initial transaction. *Id.* at 32, 161 Cal.Rptr. 516. The lender prevailed, and sought fees pursuant to the agreement. The court held that "the [lender's] collection efforts were interrelated with its defense against the [borrower's] fraud allegations," in that "[d]efense of the charge of fraud was necessary in the [lender's] efforts to collect the notes." *Id.* at 37, 161 Cal.Rptr. 516.

---

6. Indeed, *Exxess'* assumption favors CIT in this suit.

The court notes that here, the deed of trust, unlike the note, guaranty, and forbearance agreement, provides for payment of fees incurred in an "action or suit" to enforce the deed, language similar to that at issue in

*Exxess*. Because CIT is entitled to fees under the note and guaranty, the court does not address whether CIT is also entitled to fees under the deed of trust.

7. *Wagner* did not quote the specific language of the agreement. The language provided above is the *Wagner* court's paraphrase.

The agreement therefore entitled the lender to fee recovery as to the fraud claims. *Id.* The court also awarded fees incurred in defense of the negligence and bad faith claims, without discussing these claims specifically. *Id. See also Nevin v. Salk,* 45 Cal.App.3d 331, 340, 119 Cal.Rptr. 370 (1975).

■ Plaintiffs' tort claims in this case sought, in essence, to escape the contract. In opposing the present motion, guarantors describe plaintiffs' tort claims by quoting the following language from *Exxess:* "An action premised on fraud in the inducement seeks to avoid the contract rather than to enforce it; the essential claim is 'I would not have entered into this contract had I known the truth.'" *Exxess,* 64 Cal.App.4th at 711, 75 Cal.Rptr.2d 376 (quoting *Perry v. Robertson,* 201 Cal. App.3d 333, 343, 247 Cal.Rptr. 74 (1988)). As such, defense of these claims was necessary to enforcement of the guaranty (Guaranty § 9(b)) and to "collect[ion of] amounts due under [the] Note," (Note § 6(a)). *Wagner,* 101 Cal.App.3d at 37, 161 Cal.Rptr. 516. The terms of these fee shifting agreements therefore entitle CIT to recovery of fees incurred in defense of plaintiffs' tort claims.

### 3. Reasonableness of the Fee

The reasonableness of the fee request is determined in light of the reasonableness of the number of hours claimed and of the hourly rate. Plaintiffs and guarantors have not argued that the requested hourly rates are unreasonable. As to the number of hours worked, as noted above, plaintiffs and guarantors' sole objection is that the contract claim involved relatively simple questions. It appears, however, that the requested number of hours is reasonable when measured against the work required to both defend plaintiffs' tort claims and litigate CIT's breach of contract claims.

As a separate issue, it appears that some expenses requested as fees are also included in the request for costs. CIT is not entitled to double recovery as to these expenses. The court therefore directs CIT to file an amended statement of costs eliminating any duplication.

### E. Distinguishing Plaintiffs from the Guarantors

As noted above, the guaranty agreements make the guarantors responsible for all of plaintiffs' obligations to CIT. Insofar as the instant motion for fees is itself a motion for enforcement of a contract, it is appropriate to conclude that under the guaranty contract, guarantors are liable for fees owed by plaintiffs.

### III. CONCLUSION

For the reasons stated above, the guarantors' objections to entry of judgment are overruled. CIT is entitled to recover attorney's fees incurred in pre-litigation enforcement of the loan and guaranty, in litigation of CIT's breach of contract claim, and in CIT's defense of plaintiffs' tort claims. To the limited extent that plaintiffs and guarantors argue that the requested fees are unreasonable, these objections are overruled.

The court therefore orders as follows:

1. CIT's request for entry of judgment, Doc. No. 104, is GRANTED. The clerk of the court is directed to enter CIT's proposed judgment, Doc. No. 105.

2. CIT's request for costs, as specified in Doc. No. 109, is GRANTED.

3. Within 14 days of the date of this order, defendant and third party plaintiff CIT SHALL file an amended calculation of fees that excludes amounts separately awarded pursuant to the bill of costs, Doc. No. 109.

Within 7 days thereafter, plaintiffs and guarantors MAY file an objection to this amended calculation. Objections may be made *solely* on the ground that expenses included in the calculation of fees were previously included in the calculation of costs.

IT IS SO ORDERED.